UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **Cathleen M. Lindgren**, | Case No. 23-cv-2636 |
| Plaintiff, | |
| v. | |
| **Allina Health System**, | **COMPLAINT** |
| | **(**JURY TRIAL DEMANDED) |
| Defendant. | |

# INTRODUCTION

1. Plaintiff brings this wrongful termination action against Defendant arising out of Defendant's violations of Title VII of the Civil Rights Act of 1964 and the Minnesota Human Rights Act.

# JURISDICTION AND VENUE

2. Plaintiff's federal law claims are brought under Title VII of the Civil Rights Act of 1964 ("Title VII") and therefore this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1343.

3. Supplemental jurisdiction pursuant to 28 U.S.C. § 1367 is invoked for Plaintiff's state law claims under the Minnesota Human Rights Act ("MHRA"), as these claims form part of the same case and controversy as Plaintiff's federal claims.

4. Venue is this Court is appropriate pursuant to 28 U.S.C. § 1391, as the unlawful practices and acts described herein occurred within this State and District.

5. Plaintiff timely filed a charge of discrimination with the EEOC on or about November 19, 2021. On or about April 27, 2023, the EEOC found reasonable cause that Defendant

engaged in discrimination and retaliation. On June 1, 2023, the EEOC issued a Right to Sue letter to Plaintiff.

## PARTIES

6. Cathleen Lindgren ("Plaintiff" or "Ms. Lindgren") is a resident of the State of Minnesota and a former employee of Allina Health.

7. At all times relevant to this Complaint, Defendant Allina Health System is and has been a Minnesota corporation doing business in the State of Minnesota. At all times relevant herein, Defendant has continuously had at least fifteen (15) employees and has been a covered "employer" as that term is defined under Title VII and the MHRA.

8. At all times relevant to this Complaint, all individual managers, supervisors, and human resource personnel referred to herein acted with actual authority from Allina Health and as agents of the same.

## FACTUAL BACKGROUND

9. Defendant Allina Health System ("Allina") is a health care provider that operates several hospitals and clinics in the greater Twin Cities area.

10. In October 2021, Ms. Lindgren applied for a position as a Registered Nurse ("RN") in Allina's Emergency Department.

11. On October 25, Ms. Lindgren was interviewed by Wendy Baumgartner ("Ms. Baumgartner"), a Manager in Allina's Emergency Department.

12. Following her interview, Allina made of offer of employment to Ms. Lindgren.

13. At the time she was hired, Allina had a Covid-19 and Flu Vaccine Mandate Policy (the "Vaccine Mandate Policy") in effect. Pursuant to Allina's Vaccine Mandate Policy, all

employees must obtain the Covid-19 and Flu vaccines unless they are approved for a medical or religious exemption.

14. Ms. Lindgren is a Christian and believes her body is made in the image and likeness of God. Ms. Lindgren believes that she must support her own God-given immunity and that she must treat her body well. Ms. Lindgren has determined that she cannot, consistent with her sincerely held religious beliefs, inject vaccines into her body.

15. On October 27, Ms. Lindgren submitted a request for a religious exemption to Allina's Vaccine Mandate Policy.

16. On October 28, Ms. Lindgren's was informed that her religious exemption request to the Vaccine Mandate Policy was approved.

17. That same day, Ms. Lindgren received an email from Katrina Arizmendi ("Ms. Arizmendi"), an employee in Allina's Human Resource Department ("HR"), stating that it was a requirement that Ms. Lindgren obtain a letter from her religious leader stating that they are opposed to her getting this vaccine because of her religion.

18. On November 1, Ms. Lindgren received another email from Ms. Arizmendi stating that her additional vaccine exemption request for the Measles, Mumps, and Rubella ("MMR") vaccines had been submitted to HR.

19. Later that evening, Ms. Lindgren received a phone call from Melissa Lindquist ("Ms. Lindquist"), a Senior Employee Relations Specialist at Allina. Ms. Lindquist apologized to Ms. Lindgren for Ms. Arizmendi's request, stating that it was improper for Allina to require a letter from her pastor in order to verify her religious beliefs. Ms. Lindquist also advised Ms. Lindgren to update her vaccine exemption request to include a requested exemption for measles.

20. On November 4, Ms. Lindquist sent Ms. Lindgren an email stating that Allina had reviewed her vaccine exemption request for the MMR vaccine and wanted to schedule a meeting with Ms. Lindgren on November 5.

21. On November 5, Ms. Lindgren participated in a Teams Meeting with Ms. Lindquist and Ms. Arizmendi.

22. During that meeting, Ms. Lindquist explained that the reason Allina was delaying the start of Ms. Lindgren's employment was due to her MMR vaccine exemption request.

23. Ms. Lindgren requested clarification as to the issue.

24. In response, Ms. Arizmendi responded that our medical director is very strict on measles.

25. Ms. Lindgren asked whether it was Allina's policy to "never allow a religious exemption for the MMR" vaccine if an employee is in a patient-caring role.

26. Ms. Arizmendi responded in the affirmative.

27. Ms. Lindquist added that the MMR vaccine was required of employees in order to provide patient care and therefore would not permit her to work in a patient-care role without obtaining the MMR vaccine.

28. Ms. Lindquist then redirected her attention to Ms. Arizmendi and asked whether it was an option for Ms. Lindgren to get the MMR vaccine.

29. Ms. Arizmendi responded "yes, but she has the religious reasons why she does not want to get [the vaccine.]"

30. Ms. Lindquist then informed Ms. Lindgren she could "rethink" her religious beliefs if she was willing.

31. Ms. Lindgren responded that she was not willing to reconsider her religious beliefs but would consider other options.

32. On November 10, Ms. Lindgren sent an email to Allina proposing alternatives to the vaccine.

33. In response, Allina stated that it would not permit her to start her employment unless she obtained the MMR vaccine.

34. As a result, Allina did not permit Ms. Lindgren to start working for Allina and thereby effectively terminated her employment.

35. Upon information and belief, other employees of Allina have been permitted to work in patient-care roles without obtaining the MMR vaccine.

## CAUSES OF ACTION

### COUNT I

**Violation of Title VII – Religious Discrimination and Failure to Accommodate**

36. Plaintiff incorporates the foregoing paragraphs of her Complaint by reference.

37. Defendant is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

38. Plaintiff is an "employee" within the meaning of 42 U.S.C. § 2000e(f).

39. Plaintiff has sincerely held religious beliefs which prevent her from receiving the MMR vaccine.

40. Plaintiff informed Defendant of the conflict between these religious beliefs and Defendant's Vaccine Mandate Policy.

41. Title VII prohibits discrimination on the basis of religion. 42 U.S.C. § 2000e-2.

42. Title VII also requires covered employers to provide reasonable accommodations to their employees' sincerely held religious beliefs. 42 U.S.C. § 2000e(j).

43. The law prohibits Defendant from scrutinizing what it believes to be the sincerity of Plaintiff's religious beliefs, or whether Plaintiff's exercise of their beliefs is logical or as consistent as Defendant believe the exercise of those religious beliefs should be.

44. Guidance issued by the Equal Employment Opportunity Commission and decisions of the federal courts require that requests for reasonable accommodation be considered based on their individual, particularized circumstances, and that any claim of undue hardship or "direct threat" by the employer be assessed on a case-by-case basis rather than through application of a blanket rule.

45. In response to Plaintiff's request for reasonable accommodation of her sincerely-held religious beliefs, Defendant asserted a uniform, blanket rule in rejecting Plaintiff's requests, in violation of both Title VII and the EEOC's persuasive guidance on reasonable accommodations.

46. Despite Plaintiff's request for Defendant to engage in an interactive process regarding her request for an accommodation, Defendant refused to engage in the interactive process and instead summarily rejected Plaintiff's request for an exemption.

47. As a result of Defendant's conduct in direct violation of Title VII, Plaintiff has suffered loss of past and future income, mental anguish, emotional distress, and other damages in amounts in excess of $75,000.

48. Defendant committed the above-described acts with malice and/or in reckless disregard of Plaintiff's rights under the Title VII. As a result thereof, Plaintiff is entitled to punitive damages.

## COUNT II

### Violation of the MHRA – Religious Discrimination

49. Plaintiff incorporates the foregoing paragraphs of her Complaint by reference.

50. Minn. Stat. § 363A.01, *et seq.* prohibits discrimination in employment based on religion.

51. Defendant is an "employer" under the MHRA.

52. Plaintiff was an "employee" under the MHRA.

53. Plaintiff has sincerely held religious beliefs which prevented her from receiving the MMR vaccine.

54. Plaintiff informed Defendant of the conflict between her religious beliefs and Defendant's Vaccine Mandate Policy.

55. Minn. Stat. § 363A.01, *et seq*. prohibits discrimination on the basis of religion and further requires covered employers to respect its employees' sincerely held religious beliefs.

56. Minn. § Stat. 363A.01, *et seq*. prohibits Defendant from scrutinizing what they believe to be the sincerity of Plaintiff's religious beliefs, or whether Plaintiff's exercise of her beliefs is logical or as consistent as Defendants believe the exercise of those religious beliefs should be.

57. In response to Plaintiff's request for reasonable accommodation of her sincerely-held religious beliefs, Defendant asserted a uniform, blanket rule in rejecting Plaintiff's requests, in violation of both Title VII and the EEOC's persuasive guidance on reasonable accommodations.

58. As a result of Defendant's conduct in direct violation of the MHRA, Plaintiff has suffered loss of past and future income, mental anguish, emotional distress, and other damages in amounts in excess of $75,000.

59. Defendant committed the above-described acts with malice and/or in reckless disregard of Plaintiff's rights under the MHRA. As a result thereof, Plaintiff is entitled to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Cathleen Lindgren requests that this Court enter a judgment in her favor and against Defendant as follows:

1. An order granting Plaintiff a judgment against Defendant;

2. An order granting Plaintiff all damages including back pay, front pay, and compensatory damages in such amount as the jury may determine, but not less than $75,000.00;

3. An order granting Plaintiff punitive damages;

4. An order granting Plaintiff treble damages under the MHRA;

5. An order granting Plaintiff injunctive and declaratory relief against Defendant, whereby the Defendant is temporarily and permanently enjoined and restrained from any further discrimination of Plaintiff;

6. An order for Defendant to pay Plaintiff's costs, disbursements, interest, and attorneys' fees as allowed under the Title VII and MHRA;

7. An order for Defendant to pay any and all further relief available, such as any relief this Court may consider equitable or appropriate.

PLAINTIFF DEMANDS A JURY TRIAL.

Dated: August 28, 2023.                    **TYLER W. BRENNAN LAW, LLC**

/s/ Tyler W. Brennan
Tyler W. Brennan, #397003
T3 Building
323 N. Washington Ave. #200
Minneapolis, MN 55401
Phone: (612) 351.0084
Fax: (612) 354.4152
E-mail: tyler@tylerwbrennanlaw.com